UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBYN FENTY and TOURIHANNA, Plaintiffs, | **12-cv-5207** |
| -against- | Assigned to: Hon. P. Kevin Castel |
| BERDON, LLP, MICHAEL MITNICK, and PETER GOUNIS, Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION SEEKING SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37**

Of Counsel for Defendants Berdon, LLP and Michael Mitnick:
Thomas R. Manisero
David S. Eisen
Peter J. Larkin
Nicole B. Liebman

Of Counsel for Defendant Peter Gounis:
James M. Andrews
Peter B. Bennett
Christopher J. Marino


# TABLE OF CONTENTS

Facts .......... 1

Argument .......... 1

I. Plaintiffs' Claims Should Be Dismissed for Willful Failure to Attend Her Deposition and Her Violation of the Court's May 22 Order .......... 1

A. Ms. Fenty's Claims Should be Dismissed Under Rule 37(b) for Failure to Comply with This Court's Discovery Orders .......... 1

1. Ms. Fenty's noncompliance with the Court's discovery orders was willful .......... 3

2. The duration of Ms. Fenty's noncompliance and delay has been substantial and prejudicial .......... 4

3. Ms. Fenty should have been aware of the consequences of skipping a court-ordered deposition .......... 6

4. Dismissal is an appropriate sanction as lesser sanctions are unlikely to be effective .......... 7

B. Dismissal Is Also Warranted Under Rule 37(d) .......... 10

Conclusion .......... 12

Defendants Berdon LLP, Michael Mitnick, and Peter Gounis (collectively "Defendants") respectfully submit this Memorandum of Law in support of Defendants' motion seeking sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## FACTS

A full recitation of the facts may be found in the declaration of David S. Eisen submitted herewith.

## ARGUMENT

### I. Plaintiffs' Claims Should Be Dismissed For Willful Failure to Attend Her Deposition and Her Violation of the Court's May 22 Order

Under Federal Rule of Civil Procedure 37, the Court should dismiss Ms. Fenty's claims as a sanction for her failure to attend her June 19 deposition and repeated dilatory tactics in violation of this Court's orders. The failure to attend her most-recently rescheduled deposition on June 19—following the Court's many Orders, and after the Defendants' numerous accommodations to Ms. Fenty's schedule—indicates a disregard for the Court's directives, the expense of litigation, and a lack of interest in the claims that Ms. Fenty herself filed. At this stage, such behavior is inexcusable.

#### A. Ms. Fenty's Claims Should Be Dismissed Under Rule 37(b) for Failure to Comply with This Court's Discovery Orders

"'All litigants . . . have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal' with or without prejudice." *Martin v. City of New York*, 2010 U.S. Dist. LEXIS 48258, at *4 (S.D.N.Y. 2011) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." The rule presents a

range of available sanctions, including deeming a disputed fact to be established, precluding evidence on a subject, or striking a pleading and entering a default judgment. Rule 37(b)(2)(A)(i-vii). Determination of the appropriate sanction for discovery violations is committed to the court's discretion. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). The purpose of disciplinary sanctions under Rule 37 is three-fold: "[f]irst, they ensure a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation." *Update Art, Inc. v. Modiin Publ'g Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).

The Second Circuit has articulated numerous factors to be considered in evaluating the imposition of sanctions under Rule 37, including "'(1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d at 302 (2d Cir. 2009) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). "The court may consider the full record in the case in order to select the appropriate sanctions." *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). Consideration of these factors militates in favor of dismissal of Ms. Fenty's claims.[1]

[1] The result is the same under Rule 16(f) of the Federal Rules of Civil Procedure, which authorizes sanctions, and requires an award of fees absent substantial justification, for "fail[ing] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C); *see* Fed. R. Civ. P. 16(f)(2). A Court's power to impose a sanction is also implicit in its inherent authority to control its own docket. *See Link v. Wabash R.R.*, 370 U.S. 626, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962).

1. <u>Ms. Fenty's noncompliance with the Court's discovery orders was willful</u>

Ms. Fenty's failure to appear at her June 19 deposition in violation of the Court's May 22 Order was willful. Defendants accommodated requests from Plaintiffs' counsel to delay and reschedule Ms. Fenty's deposition on numerous occasions. As set forth in the Declaration of David S. Eisen, these delay tactics started in November 2012 and continue to this day, the most recent event being Ms. Fenty's refusal to appear on June 19, 2013 in London. This Court granted several extensions of the discovery deadline as a result of these delays and entered 3 separate stipulations and Orders specifically addressing the date of Ms. Fenty's second deposition. *See* March 15, 2013 Order (ordering that Ms. Fenty "be produced for an additional 5 hour examination by April 19, 2013); Stipulation entered April 8, 2013 (rescheduling Fenty deposition for May 8, 2013 in Los Angeles); May 22, 2013 Stipulation and Order (rescheduling Fenty deposition for June 19, 2013 in London). "Noncompliance may be deemed willful 'when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Nieves v. City of New York*, 208 F.R.D. at 536 (citation omitted). "[A] party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." *Id.* (quoting *Mohegan v. SZS 33 Assoc. LP*, 148 FRD 500 509 (S.D.N.Y. 1993))(unexcused failure to comply with two discovery orders warranted dismissal). The Court's Orders setting the date of Ms. Fenty's deposition "were clear and unambiguous, and left [] no room for misapprehension," accordingly, Ms. Fenty's noncompliance should be deemed willful. *Martin*, 2010 U.S. Dist. LEXIS 48258, at *6.

Throughout, the excuses for the cancellations and refusals to appear were at best relayed belatedly to defense counsel and at worst untrue. When Ms. Fenty offered May 8, and then May 9, for her deposition, she did not advise defense counsel of what she must have already known—her concert at the Barclay's Center in Brooklyn earlier that week was subject to change because it was scheduled for the same night as a potential Nets playoff game. Nothing was said to defense counsel until after the defense counsel had prepared for her deposition only to see the effort wasted. Moreover, the rescheduling of her Brooklyn concert date may have made her May 9 deposition inconvenient, but there has been no suggestion that it was not possible for Ms. Fenty to appear. Eisen Decl. ¶¶ 22-23. Similarly, Ms. Fenty's sudden illness announced the morning of June 19, 2013, after defense counsel had already prepared again for her deposition and flown to London is dubious at best. Ms. Fenty performed shortly before and shortly after her June 19 deposition date and was "tweeting" about the NBA playoffs at 5:00 am London time, just six hours before her deposition was scheduled to begin. Eisen Decl. ¶¶ 31-32.

2. <u>The duration of Ms. Fenty's noncompliance and delay has been substantial and prejudicial</u>

Plaintiffs' counsel argued in their July 1 letter to this court that the duration of Ms. Fenty's noncompliance was limited because her counsel quickly "suggested multiple alternative dates for the deposition." July 1, 2013 Letter from Edward Estrada to Honorable P Kevin Castel. Plaintiffs' argument misconstrues the facts. Ms. Fenty's noncompliance did not begin on June 19. Plaintiffs' attempts to delay and avoid her deposition began on October 15, 2012 when Defendants first noticed her deposition and Plaintiffs' counsel chose not to respond. Since then, Plaintiffs dilatory tactics have been ongoing for 9 months, during which time Ms. Fenty blatantly disregarded numerous

different deposition dates.  Eisen Decl. ¶ 36.  All but the earliest of these dates were offered by Plaintiffs as available dates for the deposition and subsequently confirmed by the Defendants.  Several dates were set with the assistance of the Court.  Accordingly, the course of conduct that has lead us to this point has been extremely prolonged and in direct violation of several court Orders.

Moreover, even if the period prior to the first day of testimony is ignored, which we submit it should not be ignored, Defendants still have been attempting to complete the deposition of Ms. Fenty for over 6 months.  Ms. Fenty's efforts to avoid a second day of testimony started on January 29, 2013, when she refused to complete her deposition in spite of apparent availability on January 30, and have continued ever since.  Even if Ms. Fenty's noncompliance with the Court's most recent May 22 Order began on June 19, the earliest alternative deposition date offered by Plaintiffs' counsel was July 23, 2013 in Sweden and the remainder of the dates were in August and September 2013-between one and three months after the June 19 deposition that Ms. Fenty chose not to attend.

Consequently, Ms. Fenty's delay and noncompliance have been substantial.  Moreover, they have prejudiced the Defendants', ability to depose other witnesses and formulate defenses, and they have delayed this case.  Defendants noticed Ms. Fenty's deposition in October 2012 in an effort to depose her early in the discovery process so they would have her testimony before deposing the numerous other witnesses in this case.  Instead, Ms. Fenty's delays forced Defendants to delay the deposition of other witnesses, ultimately taking many of those depositions without full information as to Ms. Fenty's knowledge of and participation in key events relevant to her claims.  *See TransMec Overseas Peru S.A.C. v. W/V CCNI Punta Arenas*, 2008 U.S. Dist. LEXIS 46114

(S.D.N.Y. June 11, 2008) (dismissing with prejudice where failure to provide discovery and deposition withheld evidence "that would permit [defendant] to know whether it has valid defenses"). The duration of Ms. Fenty's noncompliance has been sufficiently lengthy and prejudicial to warrant dismissal. *See Martin*, 2010 U.S. Dist. LEXIS 48258, at *6 (dismissing without prejudice under Rule 37(b), Rule 41(b) and the inherent power of the court where Plaintiff failed to provide sworn interrogatory responses for *two and a half months*, though only *one month* was in violation of court order).

3. <u>Ms. Fenty should have been aware of the consequences of skipping a court-ordered deposition</u>

While Ms. Fenty has not received an explicit warning from the Court that failure to appear for her deposition would result in dismissal, it is not reasonable for her to have assumed that she could fail to appear for a court-ordered deposition, sending defense counsel on a wild goose chase across the Atlantic, without repercussion. In the September 6, 2012 Civil Case Management Plan and Scheduling Order, the Court clearly stated that no extensions beyond the March 14, 2013 deadline for depositions should be anticipated based on the generous discovery period in that Order. On March 15, the Court entered a "FINAL" extension of fact discovery until May 10, 2013. When Ms. Fenty cancelled her May 9, 2013 deposition, the Court was kind enough to enter an "ABSOLUTELY FINAL" Scheduling Order to permit Ms. Fenty to go beyond the May 10, 2013 discovery deadline so she could appear in accordance on June 19, 2013. After countless discussions to schedule and re-schedule and re-schedule again Ms. Fenty's deposition, with 3 scheduling orders elevating from anticipated to be final, to final, to absolutely final, there is no way Ms. Fenty did not understand she was disregarding the Court's Orders and that a severe sanction, including dismissal, was a potential

reprercussion. Viewed in this light, Ms. Fenty's conduct on June 19 was egregious. Clearly, the expense of paying for counsel for both sides to travel to London, which likely exceeded $100,000 including her own counsel, was not enough incentive to show up. Defense counsels' past willingness to accommodate Ms. Fenty's schedule, which has now been pushed beyond the breaking point, cannot excuse her behavior, nor should it result in the overly lenient reward of another rescheduled deposition. Ms. Fenty had more than adequate notice that she needed to appear or face dire consequences. Ms. Fenty chose not to appear and completely disregarded those consequences. The record supports imposition of the most severe sanctions available – dismissal.

4. Dismissal is an appropriate sanction as lesser sanctions are unlikely to be effective

Defendants acknowledge that dismissal is a harsh sanction, however, "courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 735 (2d Cir. 1987) (citation omitted). Consideration of the efficacy of lesser sanctions in this case leads to the conclusion that the harsh sanction of dismissal is needed in order to adequately sanction this plaintiff and deter future noncompliance. Ms. Fenty's recent conduct already indicates that a monetary sanction is not enough. The aborted June 19 deposition cost Ms. Fenty at least $75,000, and probably $100,000, and that was not sufficient motivation to procure her appearance. Paragraph 3 of the Court's May 22 Order required Plaintiff to reimburse defense counsel for the costs associated with their international travel to the take the deposition. This provision should have served as an incentive to Ms. Fenty to complete the deposition on June 19. It did not. Defense counsel estimates that Ms. Fenty incurred at least $75,000 to reimburse defense counsel for their travel time, airfare, and

hotel rooms (though the Order did not require her to reimburse them for lost time on June 19 if she failed to appear). Eisen Decl. ¶ 34. Presumably, the reimbursement of defense counsel is in addition to the attorneys' fees and travel costs charged by Ms. Fenty's own lawyers who also had to travel to London. The combined costs for attorneys for both sides to travel to London would appear to be at least $100,000.

Given Ms. Fenty's financial resources and her willingness to waste approximately $100,000 on a deposition she chose not to attend, the efficacy of lesser sanctions such as monetary penalties is doubtful. For someone who could blithely burn $100,000, monetary sanctions tied to the Defendants' additional costs is not likely even to get Ms. Fenty's attention. Instead, the manifest disregard for this Court's many Orders fully warning Ms. Fenty (a) that no extensions should be anticipated, (b) that the first extension was final, and (c) that the second extension was absolutely final, demonstrates that nothing less than dismissal is appropriate in this situation. Here, justice has been delayed by Ms. Fenty, and the ability of the Defense to build its case in an orderly fashion has been effectively denied, but Ms. Fenty has hardly even been inconvenienced. Accordingly, Plaintiffs' case should be dismissed. *See Dodson v. Runyon*, 86 F.3d 37, (2d Cir. 1996) (when considering dismissal for failure to prosecute, "the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal.").

Although, Defendants strenuously submit that dismissal is the 1 remedy that is both commensurate with Ms. Fenty's conduct and an adequate deterrent against similar future conduct (this is not Ms. Fenty's only lawsuit), Defendants feel compelled to address lesser remedies in recognition of the view that dismissal is a harsh remedy. As a

first alternative to dismissal, Defendants submit that Ms. Fenty should be precluded from testifying at trial or offering any portion of her prior deposition testimony.  At this point, Defendants' expert witnesses cannot finalize their opinions because the entirety of Ms. Fenty's deposition testimony is not available.  Similarly, Defendants cannot finalize their analysis of the case or their assessment of potential dispositive motions.  This prejudice to Defendants could be alleviated without further delaying this case by precluding Ms. Fenty from testifying at trial.

Additionally, since Plaintiffs seemingly allege in this case that Ms. Fenty was damaged because Defendants did not prevent her from wasting her money, Defendants also request that the Court enter a factual finding in this case that may be introduced at trial stating that "Ms. Fenty during the course of this litigation requested and was given the accommodation of providing a portion of her testimony in this case in London, so long as she paid for the additional expense associated with being given this opportunity, which expenses were approximately $100,000, but on the morning of the deposition failed to appear, claiming she was ill, despite performing shortly before and shortly after the scheduled date, and posting comments on her Twitter account at 5:00 am London time on the morning of her deposition about the recently concluded game 6 of the NBA championship finals."  Not only is Ms. Fenty's conduct inconsistent with her claims that she was willing to have her spending controlled by the Defendants during their professional relationship, but it also is consistent with Defendants' position that (1) Ms. Fenty did what she wanted with her money regardless of Defendants' advice, and (2) that Ms. Fenty frequently avoided meetings she found tedious or inconvenient, including a long sought meeting in Los Angeles that caused Mr. Mitnick to fly to California only to

have the meeting delayed multiple times and ultimately cancelled because Ms. Fenty claimed she was ill. Defendants request that this remedy be imposed in addition to preclusion.

Lastly, while Defendants strongly submit that monetary sanctions alone are not adequate to both appropriately sanction Plaintiffs' conduct and deter similar behavior in the future, monetary sanctions are available to the Court. At a minimum, Defendants have unnecessarily incurred additional legal fees and costs that could have been avoided and have not already been reimbursed. For example, Defendants have prepared for the second day of Ms. Fenty's testimony twice and will have to prepare a third time. Additionally, Defense counsel wasted a day in London that has not been compensated. Moreover, the countless emails and telephone calls to perpetually reschedule Ms. Fenty's deposition, as well as the expense of this motion, have not been reimbursed. If the Court is inclined to impose monetary sanctions for these costs, Defendants request the opportunity to submit a full statement of the costs incurred.

In addition to unnecessary costs incurred by Defendants, the Court should also consider a monetary sanction to deter Plaintiffs from similar behavior in the future. Since Ms. Fenty apparently is unfazed by wasting $100,000, Defendants respectfully submit that Ms. Fenty would not be deterred unless the sanction was much higher than $100,000.

**B. Dismissal Is Also Warranted Under Rule 37(d)**

Rule 37(d) provides that a court may order sanctions if "a party . . . fails, after being served with proper notice, to appear for that person's deposition," even in the absence of a court order. Fed. R. Civ. P. 37(d)(1)(A)(i). "Rule 37(d) makes it explicit that a party properly served has an absolute duty to respond, that is, to present himself for

the taking of his deposition." *Stiftung v. Sumitomo Corp.*, 2001 WL 1602118, *7 (S.D.N.Y. Dec. 14, 2001) (quoting *Penthouse Int'l v. Playboy Enters., Inc.*, 663 F.2d 371, 390 (2d Cir. 1981). Rule 37(d)(1)(A)(i) also provides a basis for sanctions against Ms. Fenty.

The sanctions available against a party who fails to attend her own deposition "include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)" including dismissal. Fed. R. Civ. P. 37(d)(3). Bad faith is not a prerequisite to the imposition of sanctions under Rule 37(d). *Stiftung*, 2001 WL 1602118, at *7. Additionally, where a party fails to attend her deposition, Rule 37(d) mandates the award of attorneys fees: "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id*. However, reimbursement of an opposing party's expenses caused by a failure to cooperate is the "mildest" of the sanctions authorized by Rule 37(d). *Stiftung v. Sumitomo Corp.*, 2001 WL 1602118 (S.D.N.Y. Dec. 14, 2001)(the Court ordered sanctions under Rule 37(d) against the plaintiff and plaintiffs' attorneys for, among other things, the failure to appear for depositions). Moreover, where a party fails to attend multiple scheduled depositions dismissal is the appropriate sanction. *Roberts v. Norden Div., United Aircraft Corp.*, 76 F.R.D. 75, 81 (E.D. N.Y. 1977) (dismissing pro se complaint where plaintiff failed to attend at least 3 scheduled deposition dates, and plaintiff had a blasé attitude and gross indifference with respect to making himself available for taking of deposition at designated times).

For the reasons set forth above in the discussion of Rule 37(b), the same requested there also are appropriate under Rule 37(d).

**CONCLUSION**

For the reasons stated above, Defendants respectfully request that an Order imposing sanctions be granted in accordance with the arguments set forth above.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: /s/ Nicole B. Liebman
Thomas R. Manisero
David S. Eisen *pro hac vice*
Peter J. Larkin
Nicole B. Liebman
*Attorneys for Berdon, LLP and Michael Mitnick*
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000
Nicole.Liebman@wilsonelser.com

GIORDANO, HALLERAN & CIESLA, P.C.

By: /s/ Christopher J. Marino
James M. Andrews
Peter B. Bennett
Christopher J. Marino
*Attorneys for Peter Gounis*
125 Half Mile Road, Ste 300
Red Bank, New Jersey 07701
(732) 741-3900
CMarino@ghclaw.com